UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH A. STALLARD,<br><br>    *Plaintiff*,<br><br>  v.<br><br>CAPCOM CO., LTD,<br><br>    *Defendant*. | Civil Action No. 22-645 (TJK) |

**MEMORANDUM OPINION & ORDER**

  Defendant Capcom Co., Ltd. moves to dismiss Plaintiff Joseph Stallard's pro se complaint for copyright infringement, trademark infringement, and various common law claims for insufficient service of process and failure to state a claim. The Court cannot conclude on the record before it that service was proper. But for the reasons explained, rather than hold an evidentiary hearing or dismiss the case, the Court will provide Stallard leave to perfect service. Thus, the Court need not address whether his complaint states a claim.

**I. Background**

  Stallard is a Virginia resident who creates and publishes video games and graphic novels. *See* ECF No. 1 ("Compl.") ¶¶ 11–16. In 2017, he released a video game titled *Target of Desire: Episode 1*, which features a character named "Maria," that Stallard graphically rendered using a 3D model. *Id.* ¶¶ 11–12, 16. Two years later, Capcom Co, Ltd. ("Capcom")—a Japanese corporation operating out of Japan—released a video game titled *Devil May Cry 5* featuring a character named "Nicoletta Goldstein," or "Nico." *Id.* ¶¶ 4, 18, 20. In March 2022, Stallard sued Capcom, alleging that Capcom based "Nico" on "Maria" and is therefore liable for copyright and trademark infringement as well as various common law claims.

As his service deadline under Federal Rule of Civil Procedure 4 approached, the Court reminded Stallard of his service obligations. *See* Minute Order of May 10, 2022. Stallard then moved for alternative service, and the Court permitted him to effectuate service on Capcom through Scott A. Ziegler, an individual listed as an attorney for Capcom on its SEC forms. *See* ECF No. 5; Minute Order of May 26, 2023. As it turns out, Ziegler never had an agency relationship with Capcom, and the parties now agree service on him was improper. *See* ECF No. 9 at 17–20; ECF No. 16 at 13.

Stallard also tried to serve Capcom by sending a process server to the offices of its domestic subsidiary, Capcom USA.[1] While there, the process server encountered a receptionist employed by Capcom USA. ECF No. 7-1. The server asked whether the receptionist could accept service on behalf of the CEO of Capcom, and the receptionist said she could. *Id.* The process server then left service papers with the receptionist, documenting proof of service as follows: "I delivered the [relevant] documents to [the receptionist] who indicated [she was] the person authorized to accept" the "summons on . . . [Capcom CEO] Kenzo Tsujimoto, who is designated by law to accept service of process on behalf of . . . Capcom Co., Ltd." *Id.*

**II.   Legal Standard**

A plaintiff bears the burden to show that service of process was proper under Federal Rule of Civil Procedure 4, which is a prerequisite to the Court's exercise of personal jurisdiction over a defendant. *See Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987); *Candido v. District of Columbia*, 242 F.R.D. 151, 159–60 (D.D.C. 2007). Actual or constructive notice "is not a substitute for proper service." *Salmeron v. District of Columbia*, 113 F. Supp. 3d 263, 269 (D.D.C. 2015). But should

---

[1] This attempt at service was made several days after the original service deadline, but within the window the Court provided for Stallard to effect service through Ziegler. *See* Minute Order of May 26, 2022. Thus, the Court considers this a timely attempt.

a plaintiff fail to make that showing, dismissal for insufficient service is not the only possibility. "Although district courts have broad discretion to dismiss a complaint for failure to effect service, dismissal is not appropriate when there exists a reasonable prospect that service can be obtained." *Novak v. World Bank*, 703 F.2d 1305, 1310 (D.C. Cir. 1983) (citations omitted); *see Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 29 (D.C. Cir. 2015). In those circumstances, the better practice may be to grant leave to perfect service—particularly when the plaintiff proceeds pro se. *See, e.g.*, *Prosper v. Att'y Gen. of Antigua & Barbuda*, No. 20-cv-2279, 2021 WL 2530612, at *2 (D.D.C. June 21, 2021); *Candido*, 242 F.R.D. at 164; *Hilska v. Jones*, 217 F.R.D. 16, 26 (D.D.C. 2003); *see also Dominguez v. District of Columbia*, 536 F. Supp. 2d 18, 23 (D.D.C. 2008) ("[P]ro se litigants are given greater latitude to correct defects in service of process.").

**III.   Analysis**

Capcom argues that Stallard has failed to state a claim against it. To start, though, the parties rightly spill considerable ink over whether Stallard properly served Capcom. On Stallard's motion, the Court authorized service on Ziegler, who Stallard represented was Capcom's attorney. Minute Order of May 26, 2023. But Stallard now concedes he could not have properly served Capcom through Ziegler. *See* ECF No. 16 at 13. Instead, Stallard contends he properly served Capcom by leaving the service papers with the receptionist at Capcom USA, either because doing so effected service on Capcom's CEO, or because doing so effected service on Capcom USA itself, Capcom's domestic subsidiary. *See id.* at 13–18. But Stallard has not met his burden to show proper service under either theory.

Stallard relies on Federal Rule of Civil Procedure 4(h)(1), which governs domestic service on a corporation, and provides for service either, first, "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by

appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant" or, second, in the manner prescribed by Rule 4(e)(1). Fed. R. Civ. P. 4(h)(1)(A),(B). Rule 4(e)(1), in turn, permits service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Here, that would be the District of Columbia or California—where service on Capcom USA was attempted—and Stallard relies only on the law of California. The Court takes each of his theories in turn.

### A.  Service on the Receptionist at Capcom USA

Stallard's first theory is that service on Capcom USA's receptionist was proper because service on her constituted service on Capcom's CEO which, in turn, constituted service on Capcom itself. ECF No. 16 at 13–15. Under California law, a corporation may be served by delivering a copy of the summons and complaint to the "chief executive officer[] or other head of the corporation." Cal. Code Civ. Proc. § 416.10(b). But Stallard provides no authority for the idea that the CEO of Capcom may be served through an employee of Capcom USA, a different company, even if that company is Capcom's wholly owned subsidiary.

Stallard relies on *Whitehead v. CBS/Viacom, Inc.*, for the proposition that "a corporation cannot complain that the summons was delivered to the wrong person when the process server has gone to its offices, made proper inquiry of defendant's own employees, and delivered the summons according to their directions." 221 F.R.D. 1, 4 n.6 (D.D.C. 2004) (internal quotation marks omitted). True enough. When a receptionist tells a process server that he or she may accept service for a defendant, service cannot be challenged on the grounds that the receptionist lacked the authority to accept service, so long as the defendant received actual notice of the suit. *See, e.g.*, *Flynn v. Pulaski Constr. Co.*, No. 2-cv-2336 (DCP), 2006 WL 47304, at *4–5 (D.D.C. Jan. 6, 2006);

4

*Clipper v. Frank*, 704 F. Supp. 285, 287 (D.D.C. 1989). Here, according to the process server, the receptionist at Capcom USA "indicated [she was] the person authorized to accept" the "summons on . . . [Capcom CEO] Kenzo Tsujimoto," and Capcom had sufficient notice of this suit to know to move to dismiss. ECF No. 7-1.

But nothing about *Whitehead* suggests that the receptionist's representation that she could accept service on behalf of the CEO of her employer's parent company is enough to effect service on that CEO. The receptionist was not an employee of Capcom, but of Capcom USA. *See* ECF No. 9-5 at 2. Nor did she work in Capcom's "offices." *See Whitehead*, 221 F.R.D. at 4 n.6; ECF No. 7-1 at 1. The parties agree that Capcom and Capcom USA are separate legal entities, though Capcom wholly owns Capcom USA. *See* ECF No. 9 at 22–24; ECF No. 16 at 16–19; ECF No. 19 at 14. Capcom and Capcom USA have separate board meetings, payrolls, employees, books and accounts, and tax returns, among other things. ECF No. 9-5 ¶ 8. Stallard points to no authority suggesting that under these circumstances, *Whitehead*'s rationale—that a defendant is barred from challenging the sufficiency of service executed according to the instructions of its own employees because of the possibility that the defendant could intentionally evade service—applies. 221 F.R.D. at 4 n.6.

B.  **Domestic Service on Capcom USA**

Next, Stallard argues that he served Capcom by serving its subsidiary Capcom USA. ECF No. 16 at 16. But even putting aside whether Stallard properly served Capcom USA,[2] he has not met his burden to show that service on Capcom USA constituted proper service on Capcom.

---

[2] As explained above, service on an employee who purports to be authorized to accept service on behalf of her employer may constitute valid service. But there is no evidence that the receptionist here purported to accept service on behalf of her employer, Capcom USA, rather than on behalf of the CEO of the Capcom parent. *See* ECF No. 7-1 at 1; *cf. Williams v. GEICO Corp.*,

Stallard relies on a "general manager" theory of substituted service under California law. Under that theory, as characterized by the Ninth Circuit, California allows for service on a foreign parent through a domestic subsidiary where, first, the foreign parent is "otherwise not readily available for service within California." *United States ex rel. Miller v. Pub. Warehousing Co. KSC*, 636 F. App'x 947, 949 (9th Cir. 2016) (citing *Gen. Motors Corp. v. Super. Ct.*, 93 Cal. Rptr. 148, 151 (Cal. Ct. App. 1971)). And second, "service through a subsidiary as general manager requires a sufficiently close connection with the parent," "depend[ing] upon the frequency and quality of contact between the parent and the subsidiary, the benefits in California that the parent derives from the subsidiary, and the overall likelihood that service upon the subsidiary will provide actual notice to the parent." *Id.* (citing *Yamaha Motor Co., Ltd. v. Super. Ct.*, 94 Cal. Rptr. 3d 494, 498 (Cal. Ct. App. 2009)).

At least on the record before the Court, Stallard fails to meet his burden on both prongs. As to the first, Stallard concedes that Capcom is readily available for service within California. Specifically, he asserts (a) that California Code of Civil Procedure § 415.20(a) permits service on a company through its CEO by "leaving a copy of the summons and complaint . . . at his or her usual mailing address" and following related procedures; (b) that Capcom's CEO maintains an estate and winery within the state of California; and (c) that, therefore, Stallard could "easily correct" service on Capcom in California. *See* ECF No. 16 at 19. Capcom does not appear to contest this point. *See* ECF No. 19 at 10–11. Thus, because the parties appear to agree that Capcom could be served within California, substituted service on Capcom USA is impermissible. *See Miller*, 636 F. App'x at 949 (citing *Gen. Motors*, 93 Cal. Rptr. at 151).

---

792 F. Supp. 2d 58, 66 (D.D.C. 2011) (service to defendant's legal officer improper when the officer neither purported to have authority to accept service on behalf of defendant nor denied such authority).

As for the second prong, Stallard has failed to show that Capcom USA shares a "sufficiently close connection" with its parent. His only argument on this point is that Capcom USA is a wholly owned subsidiary of Capcom. ECF No. 16 at 16–19. But this relationship alone, though important, does not make Capcom USA a general manager of its parent company. For example, to find that a wholly-owned domestic subsidiary was a general manager of its parent company, one California court of appeal *also* relied on a showing that the subsidiary's "principal business" was to act as the "exclusive importer and distributor" for the parent company's vehicles, provide warranty and owner manuals for those products, market them, and receive all customer complaints and accident reports for the United States involving them. *Yamaha*, 94 Cal. Rptr. 3d at 496–97. And there, the subsidiary's domestic report even described it as the parent's "Regional Headquarters for North America." Nothing similar about the relationship between the two companies is in the record here. In contrast, in *Miller*, there was no "sufficiently close relationship" between parent and subsidiary because "the record show[ed] merely that [the parent company] [held] itself and its subsidiaries out as a single integrated global 'Group,' and that the Group [issued] a single financial statement consolidating the finances of [the relevant companies]." Thus, even though California "sets the bar *exceedingly low* for who/what may be deemed a 'general manager,'" Stallard has not made that minimal showing. *See K-fee System GmbH v. Nespresso USA*, No. 22-cv-525 (GW), 2022 WL 18278402, at *7 (C.D. Cal. July 13, 2022).

\* \* \*

Given all the above, what's the best way to move this case forward? Perhaps Stallard could satisfy his burden at an evidentiary hearing, but he has not asked for that opportunity, and, as suggested above, other potential problems loom with that route, since it is unclear whether Capcom USA was properly served. On the other hand, Stallard, who proceeds pro se, contends that service

could be "easily" achieved through other means. *See* ECF No. 16 at 19. He argues that because Capcom could be served through its CEO, *see* Cal. Code Civ. P. § 416.10(b), he could perfect service by leaving a copy of the summons and complaint at the CEO's estate in California and mailing a copy to the same address, ECF No. 16 at 19; *see* Cal. Code Civ. P. § 415.20(a). Capcom has not contested this point, although the Court notes that the CEO's estate in California would have to constitute the CEO's "usual mailing address" for service to be effective, *see Levine v. Duchacova*, No. 10-cv-1200 (LAB), 2010 WL 4941951, at *3 (S.D. Cal. Nov. 30, 2010). In the alternative, Stallard could also try other methods of substituted service on Capcom USA, and although he would still have to show that it is a "general manager" of the parent company, that seems plausible given the modest showing required. One way or another, it appears that "there exists a reasonable prospect that service can be obtained," so it is appropriate to allow Stallard to perfect service, rather than dismiss the case. *Prosper*, 2021 WL 2530612, at *2.

### IV.     Conclusion and Order

For all the above reasons, it is hereby **ORDERED** that Capcom's Motion to Dismiss, ECF No. 9, is **DENIED WITHOUT PREJUDICE**. It is further **ORDERED** that Stallard shall be allowed to properly effect service on Capcom, or otherwise move to extend time for service, by March 11, 2024. Failure to do so may result in the dismissal of this case.

       **SO ORDERED.**

/s/ Timothy J. Kelly  
TIMOTHY J. KELLY  
United States District Judge

Date: January 9, 2024